1
2
3
4
5
6
7

8        **UNITED STATES DISTRICT COURT**

9        **EASTERN DISTRICT OF CALIFORNIA**

10

11   ROSALINDA ACEVEDO DE RODRIGUEZ,   )   Case No.: 1:15-cv-01199 - JLT
                                                )
12                   Plaintiff,                  )   ORDER AFFIRMING THE ADMINISTRATIVE
                                                )   DECISION AND DIRECTING ENTRY OF
13          v.                                   )   JUDGMENT IN FAVOR OF DEFENDANT,
                                                )   NANCY A. BERRYHILL, ACTING
14   NANCY A. BERRYHILL[1],                      )   COMMISSIONER OF SOCIAL SECURITY, AND
     Acting Commissioner of Social Security,     )   AGAINST PLAINTIFF ROSALINDA ACEVEDO
15                                               )   DE RODRIGUEZ
                                                )
16                   Defendant.                  )
                                                )
17   _____ )

18          Rosalinda Acevedo De Rodriguez asserts she is entitled to a period of disability and disability

19   insurance benefits under Title II of the Social Security Act.  Plaintiff asserts that the administrative law

20   judge erred in evaluating the record and seeks judicial review of the decision to deny her application for

21   benefits.  Because the ALJ applied the proper legal standards, as discussed below, the administrative

22   decision is **AFFIRMED**.

23                              **PROCEDURAL HISTORY**

24          Plaintiff filed her application for benefits on December 12, 2011, alleging disability beginning

25   on March 13, 2011.  (Doc. 9-3 at 15)  The Social Security Administration denied Plaintiff's

26   applications at both the initial level and upon reconsideration.  (*See generally* Doc. 9-4)  After

27

28          [1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal
     Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the defendant.

requesting a hearing, Plaintiff testified before an ALJ on October 17, 2013.  (Doc. 9-3 at 17, 37)  The ALJ determined Plaintiff was not disabled and issued an order denying benefits on December 6, 2013.  (*Id.* at 17-25)  Plaintiff filed a request for review by the Appeals Council.  (*See id.* at 2)

While Plaintiff's request for review was pending, she filed another application for benefits on August 3, 2015.  (Doc. 14-1 at 2)  The Commissioner issued a decision granting this application, finding Plaintiff "became disabled under [the] rules on December 7, 2013."  (*Id.*)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 2, 2016.  (*Id.* at 2-4)  Therefore, ALJ's findings that Plaintiff was not disabled through the date of December 6, 2013, became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and

2

work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520, 416.920(a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927.

### A.    Relevant Medical Evidence

Plaintiff had "low back and right leg pain," as well as "progressive weakness."  (Doc. 9-8 at 8) She was also diagnosed with "diabetes mellitus type 2, hypertension, [and] depression."  (*Id.* at 20) Plaintiff tried taking Wellbutrin for her depression, but "did not feel any change."  (*Id.*)  She stopped taking the medication, and sought counseling, which she believed "improved" her mood.  (*Id.*)

On March 28, 2011, Dr. Firooz Amjadi performed a "lumbar spine surgery for right lumbar radioculopathy."  (Doc. 9-8 at 20)  Plaintiff underwent "an anterior L5-S1 partial corpectomy, as well as interbody and instrumented fusion."  (*Id.* at 38)  The next day, she returned to the operating room for the second stage, which included "a posterior lumbar L5-S1 decompression and instrumented fusion."  (*Id.*)  She was discharged to a rehabilitation facility on March 31.  (*Id.*)

At a follow-up appointment in April 2011, Plaintiff told Dr. Amjadi that she had "some pain over the right lateral hip," though the "right leg radiating pain [was] gone."  (Doc. 9-8 at 7)  In addition,

Plaintiff said she "had 50% improvement of her low back pain." (*Id.*) Dr. Amjadi found Plaintiff's "surgical wound [was] healing well," and recommended that Plaintiff "remain in her brace for the next three months," at which point she could "wean out of the brace and start very gentle range of motion exercises with no deep bending or lifting." (*Id.*) In addition, Dr. Amjadi recommended that Plaintiff consider "a right hip bursa injection" for her pain. (*Id.*)

In May 2011, Plaintiff told Dr. Amjadi that she "was doing great following the surgery until about a week and a half [before her appointment], when she fell out of bed and developed new onset left leg pain and weakness." (Doc. 9-8 at 5) Plaintiff reported, "Since the surgery, she no longer has any right leg pain or weakness and her low back pain is improved by 75%." (*Id.*) Dr. Amjadi also noted that Plaintiff "indicate[d] significantly improved left leg pain and strength" and her dizziness was gone. (*Id.*) Dr. Amjadi found that Plaintiff's motor strength was "4/5 involving left plantarflexion," with normal sensation and intact reflexes. (*Id.*) Dr. Amjadi directed Plaintiff to "avoid any bending or lifting." (*Id.*)

Plaintiff again reported "she no longer [had] any pain radiating down the right leg" in August 2011. (Doc. 9-8 at 4) Plaintiff told Dr. Amjadi that she was "happy with the outcome of the surgery." (*Id.*) Dr. Amjadi found Plaintiff had an intact motor strength, sensation, and reflexes. (*Id.*) Further, she had "no pain with range of motion of the hips" or stressing of the SI joints. (*Id.*) However, Plaintiff had "painful involvement" in the right lateral hip, and said an injection in that hip for bursitis "was not helpful." (*Id.*) Dr. Amjadi "recommended gentle home exercises along with the use of anti-inflammatories, Tylenol and a weight loss program." (*Id.*)

Dr. Gil Schmidt performed a comprehensive psychiatric evaluation on February 27, 2012. (Doc. 9-10 at 57) Plaintiff told Dr. Schmidt that "she 'became emotional'" in 2010, but "she had difficulty describing … what may have triggered her emotional upset." (*Id.*) In addition, Plaintiff said she began taking Wellbutrin in 2009, but felt "no benefit" from it, and stopped taking the medication. (*Id.*) Plaintiff described her pain as a "7" on a scale of 1-10, and reported her pain "reache[d] this level 5 times a week… after she has completed her household chores." (*Id.* at 58) She told Dr. Schmidt that she was "taking care of her 85-year-old-mother" and took "care of the residence as well as her mother." (*Id.*) Plaintiff said she could prepare and cook meals, "get[] around town by taking the bus and/or

4

walking," and was "capable of both light and heavy duty domestic chores with noted limitations" for her low back pain.  (*Id.* at 59-60)  Dr. Schmidt observed Plaintiff's "gait … appeared within normal limits," but she had "difficulty when she dropped her glasses and was unable to bend over and pick them up from the floor."  (*Id.* at 57, 59)  Dr. Schmidt found Plaintiff's stream of mental activity, thought content, attention, and concentration were "[w]ithin normal limits."  (*Id.* at 60)  Further, he determined Plaintiff's memory was "intact and functional."  (*Id.*)  Dr. Schmidt concluded that Plaintiff had "no significant mental health impairment."  (*Id.* at 61)

At a follow-up appointment with Dr. Amjadi in March 2012, Plaintiff "indicate[d] that her right leg pain [was] completely resolved," the "left leg pain [was] improved by 75%," and the "low back pain …improved by 50%."  (Doc. 9-11 at 7)  Dr. Amjadi determined that Plaintiff's motor strength, sensation, and reflexes were intact.  (*Id.*)  In addition, Plaintiff had "no pain with palpation" on her sacrum and greater trochanteric bursae."  (*Id.*)  Dr. Amjadi recommended Plaintiff obtain an MRI and CT scan "to further assess her current complaints."  (*Id.*)

On June 12, 2012, Plaintiff told Dr. Amjadi that "for the past 2 months she [had]… significant tingling down both legs as well as significant low back pain."  (Doc. 9-11 at 6)  Plaintiff "point[ed] to the lumbosacral area as the source of her low back pain."  (*Id.*)  Dr. Amjadi found Plaintiff's motor strength was intact, sensation was normal, and reflexes were intact.  (*Id.*)  He again recommended that Plaintiff obtain an MRI.  (*Id.*)  Dr. Amjadi noted that he "also recommended physical therapy as well as anti-inflammatories and a weight loss program."  (*Id.*)

Plaintiff had the recommended MRI of her lumbar spine taken on June 15, 2012.  (Doc. 9-11 at 13)  Dr. Bernard Maristany found "[n]o significant disc/facet abnormality, spinal stenosis, or foraminal stenosis" at the L1-L2, L2-3, L3-4, and L4-L5 levels.  (*Id.*)  He found "[f]acet arthropathy" and "minimal bilateral neuroforaminal stenosis" at the L5-S1 level, where Plaintiff had discectomy and fusion.  (*Id.*)  Several days later, Plaintiff had a CT scan on her lumbar spine, which was reviewed by Dr. John Gundzik.  (*Id.* at 11-12)  Dr. Gundzik found Plaintiff had "minimal" to "mild ventral spondylotic spurring" at the T12-1 to L2-L3 levels.  (*Id.* at 11)  Also, Dr. Gundzik determined the CT showed "[v]ery mild degenerative facet changes" at the L3-L4 and L4-L5 levels."  (*Id.*)  Dr. Gundzik opined Plaintiff had post-surgical changes at the L5-S1 level, with "[v]ery mild bilateral foraminal

5

stenosis" but "[n]o significant central canal stenosis [and] no residual spondylolisthesis." (*Id.*) These MRI and CT results were also reviewed by Dr. Raquel Pina, who opined they were "essentially normal and do not show a reason for [Plaintiff's] symptoms." (Doc. 9-16 at 8)

At follow-up appointments with Dr. Amjadi in June 2012 following the MRI and CT scan, Plaintiff "indicate[d] that the surgery … helped her a great deal," though she had "some residual low back pain and occasional possible radiculopathy. (Doc. 9-11 at 5) Plaintiff's motor strength was intact, her sensation was normal, and her reflexes were intact. (*Id.* at 4) Dr. Amjadi found Plaintiff had "no pain with stressing of the SI joints," "no pain with palpation of the sacrum," and "no pain with range of motion of the hips." (*Id.*) Plaintiff demonstrated "pain with palpation of the greater trochanteric bursae." (*Id.*) Dr. Amjadi again "recommended home exercises along with the sue (sic) of anti-inflammatories and a serious weight loss program." (*Id.* at 5)

**B.     Administrative Hearing Testimony**

Plaintiff testified at a hearing before the ALJ on October 3, 2013. (Doc. 9-3 at 37) She reported that her employment history included work as a cashier at Walmart and Home Depot. (Doc. 9-3 at 49-50) She reported that she last worked as "a department supervisor" at Home Depot, which involved supervising "five, six people" and preparing reports on a computer. (*Id.* at 50-51)

Plaintiff said she had two injuries in November 2010, with the first occurring at work. (Doc. 9-3 at 45, 62) She reported that while working at Home Depot, she "took a step off the stool as [she] was doing an order on the computer," and it "felt [like] something had busted." (*Id.* at 62) Plaintiff testified she fell on her mom's porch two days later. (*Id.*) She stated she went to get her knee checked, and it revealed the problem was in her back. (*Id.*)

She reported that she had surgery on her lower back on March 29, 2011. (Doc. 9-3 at 55-56) Plaintiff said she believed the surgery helped "[i]n the beginning," but "the pain started to get stronger and stronger" once the medication was out of her system. (*Id.* at 58) She testified that she had constant back pain "[b]elow the belt line," around the tail bone. (*Id.* at 42) On a scale of "zero to ten," with "[t]en being the kind of pain that sends you to the hospital and zero being no pain," Plaintiff said her pain ranged from six to eight on an average day with medication. (*Id.* at 58) She reported that sometimes it was "hard… to get up and focus," she would spend a "bad day" in her room, lying on her

side.  (*Id.* at 58-59)

In addition to the pain in her back and knees, Plaintiff said she had diabetes and high blood pressure.  (*Id.* at 54, 64)  Plaintiff said she had "tingling" and "heat" on her feet from diabetes.  (*Id.* at 54)  Further, Plaintiff reported she had anxiety and "just [didn't] like being around too many people."  (*Id.* at 57-58)

Plaintiff said that she lived with her mother and husband and she did some of the cooking.  (Doc. 9-3 at 43)  She stated she could prepare either "a main dish or a side dish," such as frying a chicken breast and roasting a chicken in the oven.  (*Id.* at 43-44)  She reported that she was able to go grocery shopping and did not have difficulty walking the aisles if she had a shopping cart "to hold on to balance."  (*Id.* at 44)  Plaintiff said she did not have "any difficulty reaching onto the shelves" for items at the store.  (*Id.*)  She testified that she was also able to do chores such as dusting, sweeping, mopping, and vacuuming.  (*Id.* at 46-47)  Plaintiff believed the heaviest thing she could lift was "probably the bucket of water to mop," which held two gallons at the most.  (*Id.*)

She reported that she walked in her driveway for exercise and estimated she could walk "five, 10 minutes" before she needed to stop and rest.  (Doc. 9-3 at 45)  She reported she had a driver's license, but did not drive.  (*Id.* at 40-41)  She stated that as a passenger, the furthest distance she had traveled was from Shafter, California to Utah.  (*Id.* at 41)  Plaintiff estimated she was able to sit "[a]bout an hour to an hour and a half" before she had to ask the driver to stop, because it was "very uncomfortable for [her] back."  (*Id.* at 41-42)

Lawrence Hughes, a vocational expert ("VE"), also testified at the hearing.  (Doc. 9-3 at 37, 65)  The ALJ asked the VE to advise the ALJ of "points in [his] testimony that… differ or diverge from the *Dictionary of Occupational Titles*,"[2] how he diverged from that source, and his reasoning for doing so.  (*Id.* at 65-66)  The VE then classified Plaintiff's past relevant work—using the *Dictionary of Occupational Titles* — as department supervisor, DOT 299.137-010, and cashier/ checker, DOT 21.462-014.  (*Id.* at 66)  The VE opined that with the work as a department supervisor, Plaintiff had

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 416.966(d)(1).

1  "very good customer service skills" and "would have skills as an information clerk, appointment clerk,

2  [and] telemarketer." (*Id.* at 69)

3      The ALJ asked the VE to consider a hypothetical person who could "lift and carry occasionally

4  20 pounds, frequently 10;" sit for about six hours in an eight-hour workday; and stand or walk about

5  six hours in an eight-hour workday. (Doc. 9-3 at 67) Further, the ALJ stated the individual could

6  occasionally stoop, climb, crouch, and crawl. (*Id.*) The VE opined a person with these physical

7  limitations would be able to perform Plaintiff's past relevant work as a cashier. (*Id.*)

8      Next, the ALJ asked the VE to consider an individual who could lift and carry 10 pounds

9  occasionally and up to nine pounds frequently; "stand or walk two hours out of an eight hour work day,

10  with the understanding the claimant is limited to stand or walk no more than 10 minutes continuously;"

11  and sit for six hours, "with the understanding the individual can sit for no more than one hour

12  continuously." (Doc. 9-3 at 68) In addition, the ALJ indicated the person could never climb ladders,

13  ropes or scaffolding; but could occasionally stoop, crouch, crawl, kneel, and climb stairs. (*Id.*) The VE

14  testified that a person with these limitations could not perform Plaintiff's past relevant work. (*Id.*)

15  However, the VE believed that the person could perform sedentary work in the national economy, such

16  as information clerk, DOT 237.367-022; appointment clerk, DOT 237.367-010; and telemarketer, DOT

17  299.357-014. (*Id.* at 69-70)

18      The VE testified that in evaluating his responses to the hypothetical questions, he was relying

19  on both the *Dictionary of Occupational Titles* and his experience as a vocational expert. (Doc. 9-3 at

20  73) He explained that he "gave precedence to the DOT," but the responses "just fit [his] experience,"

21  and that he "can usually find people jobs." (*Id.*)

22  **C.    The ALJ's Findings**

23      Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

24  gainful activity after the alleged onset date of March 13, 2011. (Doc. 9-3 at 19) At step two, the ALJ

25  found Plaintiff had "the following severe impairments: degenerative disc disease of the lumbar spine

26  with status-post fusion of the lumbar spine, degenerative disc disease of the cervical spine, and

27  obesity." (*Id.*) At step three, the ALJ determined Plaintiff did not have an impairment, or combination

28  of impairments, that met or medically equaled a Listing, including Listings 1.02 and 1.04. (*Id.* at 21)

Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a).  The claimant can lift and carry ten pounds occasionally and less than ten pounds frequently, can walk two hours in an eight-hour workday, with the understand that the claimant can stand and walk no more than ten minutes continuously, can sit six hours in an eight-hour workday with the understanding that the claimant can sit for no more than one hour continuously, can never climb ladders, ropes, or scaffolds, and can occasionally climb stairs, stoop, crawl, crouch, and kneel.

(*Id.*)  Based upon this RFC, the ALJ concluded Plaintiff was "unable to perform any part relevant work."  (*Id.* at 24)  However, the ALJ determined Plaintiff was able to perform other "jobs existing in significant numbers in the national economy."  (*Id.*)  Consequently, the ALJ found Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 25)

## DISCUSSION AND ANALYSIS

As an initial matter, Plaintiff contends the matter should be remanded because she reapplied for benefits and was found disabled as of December 7, 2013, a day after the ALJ issued the decision now before the Court.  (Doc. 14 at 5-6)  In addition, Plaintiff contends the ALJ erred in evaluating the record by relying on vocational expert testimony that deviated from the *Dictionary of Occupational Titles*, assessing the credibility of her subjective complaints, and not following POMS DI 25015.017 (*Id.* at 6-16)  On the other hand, the Commissioner argues the ALJ's decision should be affirmed.  (*See generally* Doc. 15)

### A.      Remand based upon the Later Granting of Benefits

Plaintiff contends, "The subsequent grant of benefits one day after the ALJ's unfavorable decision constitutes a basis for remand to consider the onset date of disability."  (Doc. 14 at 5, emphasis omitted)  Plaintiff asserts that "[i]n *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010), the Court held that a decision finding disability the day after the prior ALJ decision could constitute good cause for remand under sentence 6."  (*Id.*)  Plaintiff argues that "there is a reasonable possibility that the subsequent grant of benefits was based on new evidence not considered by the previous ALJ, but overlaps time to the previous application."  (*Id.* at 5-6)  Plaintiff concludes, "The Court should remand under *Luna* to reconcile the two decisions by finding the factually supported onset date with a medical expert in light of the complexity of the issues presented."  (Doc. 14-6 at 6)

1        1.        Remands under the Regulations

2        Sentences four and six of Section 405(g) "set forth the exclusive methods by which district

3   courts may remand [a case] to the Commissioner."  *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir.

4   2002).  A sentence six remand "may be ordered in only two situations: where the Commissioner

5   requests a remand before answering the complaint, or where new, material evidence is adduced that

6   was for good cause not presented before the agency."  *Id.* (citing *Shalala v. Schaefer*, 509 U.S. 292, 297

7   n.2 (1993).  Specifically, sentence six provides that the Court "may at any time order additional

8   evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is

9   new evidence which is material and that there is good cause for the failure to incorporate such evidence

10  into the record in a prior proceeding."  42 U.S.C. § 405(g).

11       2.        Subsequent granting of benefits

12       In *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001), the Ninth Circuit addressed a

13  claimant's argument that "the district court erred in denying his motion to remand his benefits

14  application in light of the later award of benefits based on his second application."  The Court noted:

15       Under 42 U.S.C. § 405(g), remand is warranted only if there is new evidence that is
         material and good cause for the late submission of the evidence.  New evidence is

16       material if it "bears directly and substantially on the matter in dispute," and if there is a
         "reasonable possibility that the new evidence would have changed the outcome of the …

17       determination."

18  *Bruton*, 268 F.3d at 827 (quoting *Booz v. Sec'y of Health & Human Servs*., 734 F.2d 1378, 1380 (9th

19  Cir. 1984) (internal quotation marks and citations omitted) (emphasis omitted).  Although Burton was

20  found disabled as of the day after the first application was denied, the Court found Burton's second

21  application "involved different medical evidence, a different time period, and a different age

22  classification."  *Id.*  Therefore, the Ninth Circuit rejected the proposition that a disability finding made

23  one day after a prior decision constituted *per se* good cause for remand, and found the district court did

24  not err in denying a motion to remand based only upon the granting of his a subsequent application.  *Id.*

25       In *Luna,* the Ninth Circuit again reviewed circumstances where a claimant received a

26  subsequent favorable decision, and "[t]here was only one day between the denial of [her] first

27  application and the disability onset date specified in the award for her successful second application."

28  *Id.*, 623 F.3d at 1035.  In *Luna*, the claimant's second applications for disability insurance benefits and

10

supplemental security income were granted after the Appeals Council denied review on the first applications. *See Luna v. Astrue*, 2008 U.S. Dist. LEXIS 108381 (D. Az. June 23, 2008); *see also Luna*, 623 F.3d at 1034).  The Commissioner "requested that the Social Security Appeals Council accept voluntary remand of the instant matter" and "the Appeals Council agreed to accept voluntary remand to re-assess Plaintiff's mental and physical residual capacity, reevaluate all of the medical evidence, properly address Plaintiff's obesity, and consider an earlier onset date than the date found in the Notice of Award." *Id.,* 2008 U.S. Dist. LEXIS 108381 at *4.  Thus, the parties agreed that the matter should be remanded, and the sole issue before the Ninth Circuit was whether the matter should be remanded for further proceedings or remanded for the payment of benefits.  *Luna*, 623 F/3d at 1034. The Ninth Circuit observed:

> The district court held that the finding of disability based on Luna's second benefits application was new and material evidence warranting remand for further factual consideration because it commenced at or near the time Luna was found not disabled based on the first application. The court cited a district court decision holding that an ALJ's award of benefits less than a week after the ALJ denied a claimant's first benefits application constituted "new and material evidence." *See Reichard v. Barnhart*, 285 F. Supp. 2d 728, 734 (S.D. W. Va. 2003).  That case stands for the proposition that, "in certain circumstances, an award based on an onset date coming in immediate proximity to an earlier denial of benefits is worthy of further administrative scrutiny to determine whether the favorable event should alter the initial, negative outcome on the claim." *Bradley v. Barnhart*, 463 F. Supp. 2d 577, 580-81 (S.D. W. Va. 2006) (emphasizing the "tight timeline" from the denial of benefits to the grant of benefits).

*Id.*, 623 F.3d at 1034-35.  The Ninth Circuit found there was a "'reasonable possibility' that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application" and concluded the defendant showed "further consideration of the factual issues is appropriate to determine whether the outcome of the first application should be different."  *Id.*, 623 F.3d at 1035.

The Court explained its holding in *Luna* was to be distinguished from *Burton*, because in *Burton*, the "initial denial and subsequent award were easily reconcilable on the record before the court."  *Id.*, 623 F.3d at 1035.  The Court found the record was insufficient in *Luna* to determine whether the decisions "were reconcilable or inconsistent," because the Court lacked information such as whether Luna "presented different medical evidence to support the two applications," or whether there was "some other reason to explain the change."  *Id.*  Therefore, the Court affirmed the district

court's decision to remand for further proceedings rather than for the payment of benefits.  *Id.*

3.      Plaintiff's applications for benefits

Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Social Security Act.  (*See* Doc. 9-3 at 14)  The ALJ determined Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from March 13, 2011, through the date of the decision," which was issued on December 6, 2013.  (*Id.* at 25)  Nearly twenty months later—while her request for review remained before the Appeals Council— Plaintiff filed a second application for benefits on August 3, 2015.  (Doc. 14-1 at 2)  The Commissioner issued a decision granting the second application on February 12, 2016, finding she "became disabled under [the] rules on December 7, 2013."  (*Id.*)

Notably, while Plaintiff asserts "there is a reasonable possibility that the subsequent grant of benefits was based on new evidence not considered by the previous ALJ," Plaintiff fails to identify any new or material evidence.  In order for the Court to remand the case based upon the new evidence in the record, a party seeking remand must show that the new evidence is material and that there was good cause for the failure to incorporate the evidence into the record in the initial proceeding. *Cotton v. Bowen*, 799 F.2d 1403, 1409 (9th Cir. 1986).  To be material, the new evidence must bear directly and substantially on the matter in issue, and there must be a real possibility that the new evidence would have changed the outcome if it had been before the Commissioner.  *See Cotton*, 799 F.2d at 1408. There must be a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him." *Booz*, 734 F.2d at 1380 (quoting *Dorsey v. Heckler*, 702 F.2d 597, 604-05 (5th Cir. 1983)).  The Ninth Circuit determined that a claimant does not satisfy the "good cause" requirement for a remand simply by obtaining "more favorable" evidence once a claim has been denied.  *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2000).

Plaintiff offers nothing more than speculation that the grant of benefits—based on an application filed approximately twenty months after the ALJ issued a decision—involved evidence that overlapped with the dates adjudicated in the decision now before the Court.  In similar circumstances, the Central District of California determined a claimant failed to show a remand for further proceedings was appropriate, explaining:

1
2
3

> Plaintiff has not shown that the ALJ's denial of benefits in this action lacked the support of substantial evidence in the record or was legally erroneous. Plaintiff also has not presented any new and material evidence showing that there is a reasonable possibility that such evidence would have changed the ALJ's decision in this case so as to warrant remand.

4   *Mulay v. Colvin*, 2015 U.S. Dist. LEXIS 53629 (C.D. Cal. Apr. 22, 2015).  Likewise, as discussed

5   below, Plaintiff fails to show the ALJ committed legal error or that his findings lack the support of

6   substantial evidence.  Plaintiff does not identify new evidence considered with her second application

7   that could not have been presented with the first, or supported her assertion that there was "a reasonable

8   possibility" that the decision on her first application would have changed.  Moreover, Plaintiff changed

9   age categories between the applications, which has significant vocational implications and can support

10  a change in the disability determination between the two applications.[3]  *See Bruton*, 268 F.3d at 827.

11  Accordingly, the Court finds facts in this action are more closely aligned with *Bruton* rather than *Luna*,

12  and Plaintiff fails to carry the burden to identify new material evidence warranting a remand.

13  **B.      The ALJ's Credibility Determination**

14            Plaintiff contends the ALJ's adverse credibility determination "does not rest on substantial

15  evidence."  (Doc. 14 at 9, emphasis omitted)  In assessing credibility, an ALJ must determine first

16  whether objective medical evidence shows an underlying impairment "which could reasonably be

17  expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-

18  36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Where the

19  objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a

20  claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons."

21  *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).  Here, the

22  ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause

23  his alleged symptoms." (Doc. 9-3 at 22)  However, the ALJ found Plaintiff's "statements concerning

24  the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ."  (*Id.*)

25  Consequently, the ALJ was required to set forth clear and convincing reasons for rejecting Plaintiff's

26  testimony regarding her limitations.

27

28          [3] Plaintiff was "an individual closely approaching advanced age" when she first filed an application for benefits, because she was 52 years old.  (Doc. 9-4 at 2; Doc. 9-3 at 24) Plaintiff turned 55 on March 1, 2014, and as a result was a "person of advanced age" at the time she filed her second application in August 2015. *See* 20 C.F.R. § 416.963(c)-(d)

Factors that may be considered by an ALJ in assessing a claimant's credibility include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (the ALJ may consider, inconsistencies between a claimant's testimony and conduct, a claimant's reputation for truthfulness,  and a claimant's daily activities when weighing the claimant's credibility).  In this case, the ALJ considered a number of factors including inconsistent statements made by Plaintiff, her level of activity, conflicts with the medical record, and treatment. (*See* Doc. 9-3 at 22-23)

### 1.     Inconsistencies

An ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  In this case, the ALJ found Plaintiff made inconsistent statements regarding the severity of her symptoms. (Doc. 9-3 at 23)

Specifically, the ALJ noted Plaintiff "testified that the lumbosacral surgery seemed to help while she was still on medication, but the pain got worse after the medication was out of the system." (Doc. 9-3 at 23)  The ALJ observed that contrary to Plaintiff's testimony, "the medical records indicate that the claimant reported benefits from the surgery over a year after the surgery was performed."  (*Id.*) For example, the ALJ observed that "[i]n March 2012, the claimant reported that her right leg pain had completely resolved, her left leg pain had improved by 75%, and her low back pain had improved by 50%."  (*Id.*, citing Exh. 4, p. 6 [Doc. 9-11 at 7])  The ALJ also noted, "In June 2012, the claimant reported that the surgery had been helpful, but she complained 'of some residual low back pain as well as occasional numbness and tingling radiating in both of her legs.'"  (*Id.*, quoting Exh. 4F, p. 3 [Doc. 9-11 at 4])  The ALJ concluded Plaintiff's "reports of significantly improved symptoms and only 'some' residual back pain are inconsistent with her current allegations of disabling pain."  (*Id.*)  In addition, the

ALJ noted that Dr. Schmidt found Plaintiff's actions were inconsistent with her allegations, because she "appeared to over endorse the lack of a positive mood despite her inconsistent presentation." (*Id.*, citing Exh. 3, p. 3 [Doc. 9-10 at 59])

Because the ALJ identified inconsistent statements made by Plaintiff, as well as inconsistencies between her statements and presentation to Dr. Schmidt, this factor supports the adverse credibility determination. *See Smolen*, 80 F.3d at 1284; *see also Thomas*, 278 F.3d at 959 (finding the ALJ did not err by inferring that a claimant's lack of candor "carries over to her description of physical pain").

2.      Plaintiff's level of activity

A claimant's ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding of credibility. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional.  She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend.  She is able to manage her own finances...").

In this case, the ALJ observed that "the evidence indicate[d] no more than a mild limitation" with her activities of daily living.  (Doc. 9-3 at 20)  For example, the ALJ noted Plaintiff said she took care of her 85-year-old mother, was able to "get[] around town by taking the bus or walking," and "take[] care of her own hygiene." (*Id.*)  Further, Plaintiff "testified that she [could] cook, shop, [and] do household chores such as sweeping, vacuuming, and dusting." (*Id.*)  Therefore, the ALJ concluded Plaintiff "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id.*)

Because Plaintiff retained the ability to perform activities of daily living, her level of activity supports the determination that her impairments were not as disabling as Plaintiff alleged. *See Stubbs-Danielson,* 539 F.3d at 1175; *Burch*, 400 F.3d at 681; *see also See Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where … activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment").

3.      Objective medical record

In general, "conflicts between a [claimant's] testimony of subjective complaints and the

15

objective medical evidence in the record" can constitute "specific and substantial reasons that undermine … credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis").  Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

However, if an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination").  Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").

In this case, the ALJ noted that Plaintiff "testified that she must elevate her feet at least once a day for ten to fifteen minutes and must lie down flat for thirty to 45 minutes during the daylight hours, but acknowledged that no doctor advised her to do these things."  (Doc. 9-3 at 22)  The ALJ observed that a physician opined Plaintiff's "June 2012 MRI and CT of the… lumbar spine were 'essentially normal and do not show the reason for her symptoms.'"  (*Id.*, quoting Exh. 7F, p. 6)  Further, the ALJ observed:

> A June 2012 examination revealed intact motor strength, normal sensation, intact reflexes, negative tension signs, no pain with stressing of the SI joints, no pain with palpation of the sacrum, and no pain with range of motion of the hips.  (Exhibit 4F/3).  A June 2012 x-ray of the claimant's cervical spine demonstrated mild disc space loss consistent with early degenerative disc disease and moderate canal stenosis. (Exhibit 7F/38)

(*Id.* at 22)  The ALJ concluded this evidence supported a conclusion that Plaintiff's "impairments do

16

not preclude all work."  (*Id.*)

Likewise, the ALJ found Plaintiff's mental impairments "regarding anxiety and dizziness and difficulty concentrating due to her medication" were not supported by the record, because "a consultative examination revealed no severe psychological impairment and no limitations in the claimant's concentration."  (Doc. 9-3 at 22-23)  The ALJ also found "no evidence in the record" that Plaintiff's "alleged dizziness due to her medication results in any limitations."  (*Id.* at 23)

Because the ALJ identified specific inconsistencies between the medical record and Plaintiff's testimony—including normal strength, intact reflexes, normal sensation, normal gait, and normal psychological findings— the objective medical record supports the adverse credibility determination. *See Greger*, 464 F.3d at 972; *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (an ALJ may consider "contradictions between claimant's testimony and the relevant medical evidence").

### 4.    Treatment

When assessing a claimant's credibility, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. §§ 404.1529(c), 416.929(c).  Importantly, when an impairment "can be controlled effectively with medication," it cannot be considered disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ observed that Plaintiff "failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged."  (Doc. 9-3 at 24)  For example, the ALJ noted a physician "recommended… an epidural treatment for her back, but the claimant declined this treatment."  (*Id.*, citing Exh. 7F, p. 6 [Doc. 9-16 at 7])  Plaintiff does not deny she declined the treatment but asserts that "[t]he ALJ did not look at her reasoning for declining the injection," and asserts she was entitled to decline the injections because she had prior injections that "did not alleviate her pain."  (Doc. 14 at 12)  However, there is no indication in the record that Plaintiff declined the epidural treatment for her back because similar treatment did not work in her hips.  Rather, Dr. Pina's noted only that Plaintiff "was recommended to do epidural treatment but she does not want this."  (Doc. 9-16 at 7)

Notably, "if a claimant complains about disabling pain but fails to seek treatment… for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."  *Orn v.*

*Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (citation omitted)  Thus, the fact that Plaintiff declined a recommended course of treatment for her back pain supports the adverse credibility determination.

> 5.      Conclusion

The ALJ properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

**C.      Reliance upon the Vocational Expert's Testimony**

Plaintiff contends the ALJ erred at step-five of the sequential evaluation in finding that she is able to perform work as an information clerk, appointment clerk, and telemarketer.  (Doc. 14 at 6- 8)  According to Plaintiff, the ALJ failed to address the vocational expert's deviation from the *Dictionary of Occupational Titles*.  (*Id.*)

At step five, the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v. Apfel,* 240 F.3d 1157, 1162 (9th Cir. 2001) (discussing the burden shift at step five).  To make this determination, the ALJ may rely upon job descriptions in the *Dictionary of Occupational Titles*, which classifies jobs by their exertional and skill requirements, and is published by the United States Department of Labor, Employment & Training Administration.  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R. § 404.1566(d)(1).  In the alternative, the ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy."  *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 at *2 ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy.")

The ALJ called vocational expert Lawrence Hughes to determine "if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills."  (Doc. 9-3 at 25)  The vocational expert testified

"representative occupations that such an individual could perform" included: information clerk, DOT 237.367-022; appointment clerk, DOT 237.367-010; and telemarketer, DOT 299.357-014.  (*Id.*)

### 1.  Conflicts with the *Dictionary of Occupational Titles*

Pursuant to SSR 00-4p[4], occupational evidence provided by a vocational expert "generally should be consistent with the occupational information supplied by the DOT."  *Id.*, 2000 WL 1898704 at \*2.  When there is a conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert testimony] to support a determination or decision about whether the claimant is disabled."  *Id.* Further, SSR 00-4p provides:

> At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the [vocational expert] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.

*Id.*  Accordingly, the Ninth Circuit has determined an ALJ must inquire "whether the testimony conflicts with the *Dictionary of Occupational Titles*," and may only rely upon conflicting expert testimony when "the record contains persuasive evidence to support the deviation."  *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

### 2.  Whether the record supports a deviation

Plaintiff observes that "[t]he DOT does not discuss the availability of a sit/stand option."  (Doc. 14 at 6-7, citing *Buckner- Larkin v. Astrue*, 450 Fed. App'x 626, 628-29 (9th Cir. 2011))  According to Plaintiff, "The ALJ did not as whether [the vocational expert's] testimony was consistent with the DOT," and "the vocational expert did not specifically cite to or note that his opinion was based on anything other than the DOT in determining that the occupations were performable in light of a sit/stand option."  (Doc. 14 at 6-7)  Plaintiff concludes that as a result, "deviation from the DOT has no

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

support." (*Id.* at 7)  However, the record demonstrates that the deviation is supported by the vocational expert's testimony.

In *Ruiz v. Colvin,* 638 Fed. Appx. 604 (9th Cir. 2016), the Ninth Circuit determined that a deviation from the *Dictionary of Occupational Titles* was supported by a vocational expert's testimony that his opinion "was based on his experience placing people in those jobs as a vocational rehabilitation counselor." *Id.*, 638 Fed App'x at 607.  Similarly, the Court found in *Buckner-Larkin* that a vocational expert's experience supported a conclusion that the claimant could perform work, though the *Dictionary of Occupational Titles* did not address a sit/stand opinion, explaining:

> The vocational expert in this case found that the recommended jobs would allow for an at-will sit-stand option. The vocational expert noted that although the DOT does not discuss a sit-stand option, his determination was based on his own labor market surveys, experience, and research. Therefore, the conflict between the DOT and the vocational expert was addressed and explained by the vocational expert, and the ALJ addressed this in the decision.

*Buckner-Larkin*, 450 Fed. App'x at 628-29.

The record now before the Court is similar to those before the Ninth Circuit in *Ruiz* and *Buckner-Larkin*.  In finding Plaintiff could perform the jobs identified, the ALJ stated: "Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy.  The vocational expert relied on his extensive experience working in vocational rehabilitation." (Doc. 9-3 at 25)  Specifically, the ALJ asked the vocational expert to consider an individual whose limitations including standing or walking "no more than 10 minutes continuously," as set forth in the residual functional capacity. (Doc. 9-3 at 21, 68)  The vocational expert responded that a person with these limitations could perform sedentary work in the national economy, such as information clerk, DOT 237.367-022; appointment clerk, DOT 237.367-010; and telemarketer, DOT 299.357-014.  (*Id.* at 69-70)  In addition, the vocational expert testified that in identifying positions, he relied on both the *Dictionary of Occupational Titles* and his experience.  (Doc. 9-3 at 73)  He explained that he "gave precedence to the DOT," but his responses "just fit [his] experience," and that he "can usually find people jobs."  (*Id.*)  Because the vocational expert testified his conclusion was based, in part, upon his experience, the record includes "persuasive evidence" that supports a deviation from the *Dictionary of Occupational*

1   *Titles.   See Ruiz,* 638 Fed App'x at 607; *Buckner-Larkin*, 450 Fed. App'x at 628-29; *see also Massachi*,

2   486 F.3d at 1153.

**D.   Compliance with POMS DI 25015.017**

4   Plaintiff contends the ALJ's findings regarding her transferable skills fail to comply with the

5   Program Operations Manual System ("POMS") DI 25015.07, which was published on October 6, 2014.

6   (Doc. 14 at 13-16)  Plaintiff observes that POMS DI 25015.07 sets forth the procedure for an ALJ to

7   determine whether a claimant has transferable skills, directing an ALJ to note "the processes, tools,

8   machines, and materials used and the products or services."  (*Id.* at 14)  Plaintiff contends that because

9   the ALJ failed to follow the procedure POMS DI 25015.07, the finding that Plaintiff has transferable

10  skills lacks the support of substantial evidence.  (*Id.* at 13-14)

11  As an initial matter, as the Commissioner observes, POMS DI 25015.07 was implemented *after*

12  the ALJ issued his decision on December 6, 2013.  Consequently, the provision simply was not in place

13  for the ALJ when evaluating Plaintiff's past relevant work and eliciting testimony from the vocational

14  expert regarding transferable skills Plaintiff obtained.  Second, it is well-established in this circuit that

15  POMS "does not impose judicially enforceable duties on either [the] court or the ALJ." *Carillo-Yeras*,

16  671 F.3d 731, 735 (9th Cir. 20011); *see also Lockwood v. Comm'r Soc. Sec. Admin.,* 616 F.3d 1068,

17  1073 (9th Cir. 2010) (finding an ALJ did not err where the claimant identified a POMS standard not in

18  effect when the decision was issued, because it was "not even applicable" and POMS "does not impose

19  judicially enforceable duties"); *Hartley v. Colvin*, 2017 U.S. App. LEXIS 130 at *2, 2017 WL 34521 at

20  *1 (9th Cir. Jan. 4, 2017) (finding "the ALJ was not was not required to follow" POMS DI 25015.017,

21  where the ALJ's decision was issued before POMS DI 25015.017 was issued, and explaining POMS

22  "does not impose judicially enforceable duties on either this court or the ALJ."

23  Moreover, the ALJ's findings related to transferable skills complied with SSR 82-41, which

24  provides in relevant part:  "When a finding is made that a claimant has transferable skills, the acquired

25  work skills must be identified, and specific occupations to which the acquired work skills are

26  transferable must be cited in the . . . ALJ's decision."  SSR 82-41, 1982 WL 31389 at *7; *see also Bray*

27  *v. Comm'r of Soc. Admin*, 554 F.3d 1219, 1123 (9th Cir. 2009) (same).  Based upon the testimony

28  of the vocational expert, the ALJ found Plaintiff obtained the following skills from her past relevant

work as a department supervisor: "customer service, inventory control, training people, and basic math." (Doc. 9-3 at 24)  In addition, the ALJ determined the positions of information clerk, appointment clerk, and telemarketer "require skills acquired in the claimant's past relevant work." (*Id.* at 25)  Because the ALJ identified both the skills acquired and specific occupations to which they could be transferred, his findings are sufficient under SSR 82-41, and had have the support of substantial evidence with the vocational expert's testimony.  *See Hartley*, 2017 U.S. App. LEXIS 130 at *2, 2017 WL 34521 at *1 (finding "[t]he ALJ made sufficient findings, supported by substantial evidence, by identifying the work skills that [the claimant] had acquired and the specific occupations to which they were transferable").

## **CONCLUSION AND ORDER**

Because the ALJ applied the proper legal standards and the decision is supported by substantial evidence in the record, the conclusion that Plaintiff was not disabled through the date of the decision must be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.  Accordingly, the Court **ORDERS**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and

2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Rosalinda Acevedo De Rodriguez.

IT IS SO ORDERED.

Dated:   **March 19, 2017**            **/s/ Jennifer L. Thurston**
                                                     UNITED STATES MAGISTRATE JUDGE